MUNGER, TOLLES & OLSON LLP

350 SOUTH GRAND AVENUE
FIFTIETH FLOOR
LOS ANGELES, CALIFORNIA 90071-3426
TELEPHONE (213) 683-9100
FACSIMILE (213) 687-3702

560 MISSION STREET
TWENTY-SEVENTH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-3089
TELEPHONE (415) 512-4000
FACSIMILE (415) 512-4077

601 MASSACHUSETTS AVENUE NW
SUITE 500E
WASHINGTON, D.C. 20001-5369
TELEPHONE (202) 220-1100
FACSIMILE (202) 220-2300

March 3, 2021

Writer's Direct Contact
(213) 683-9575
(213) 683-5191 FAX
Erin.Cox@mto.com

**VIA E-FILING**

The Honorable Nicholas G. Garaufis
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Thorne et al. v. Square, Inc. et al.*, Case No. 20-cv-05119-NGG-RML: Request for Pre-Motion Conference on Square Inc. and Sutton Bank's Motion to Compel Arbitration

Dear Judge Garaufis:

This firm, together with co-counsel Hahn & Hessen LLP, represents defendant Square, Inc. ("Square") in the above captioned matter. On January 8, 2021, Square, together with defendant Sutton Bank (together, "Defendants") filed a request for a pre-motion conference regarding Defendants' anticipated motion to compel arbitration with respect to the initial Complaint filed on October 23, 2020 ("Complaint") by Plaintiff Deeann Thorne. (ECF No. 10.) This Court granted Defendants' request for a pre-motion conference on January 15, 2021. In response, on January 19, 2021 counsel for Thorne submitted a letter to this Court advising, for the first time, that they would be filing an amended complaint that would "moot" Defendants' request for a pre-motion conference. (ECF No. 22.) On January 29, 2021, Thorne's counsel filed a First Amended Complaint ("FAC"), adding three new named plaintiffs in this putative class action: Flor Alonzo, Robin Clements, and Demetrius Lovett (together with Thorne, "Plaintiffs"). (ECF No. 26.) The parties then jointly requested (i) a continuance of Defendants' deadline to respond

to the FAC, (ii) a deadline of March 3, 2021 for Defendants to file this pre-motion conference letter in connection with their anticipated motion to compel arbitration directed at the FAC, and (iii) a stay of any deadline to file a Rule 12(b)(6) motion to dismiss pending the Court's decision on the motion to compel arbitration. (ECF No. 27.) The Court granted the parties' requests on February 12, 2021. (ECF No. 28.)

As with Thorne, the initial named plaintiff in this lawsuit, each of the newly added named plaintiffs agreed to arbitrate the claims they assert against Defendants in this lawsuit. Plaintiffs' FAC does not moot either the grounds for compelling arbitration, or the need for a pre-motion conference regarding the motion to compel arbitration. For that reason, pursuant to Your Honor's Individual Rule IV(A)(2), Defendants once again respectfully request a pre-motion conference to address Defendants' anticipated motion to compel arbitration, this time in response to Plaintiffs' FAC.

### *Grounds for Defendants' Arbitration Motion*

With the exception of the addition of the three new named plaintiffs, the allegations in the FAC remain unchanged in all material respects from those in the original Complaint. Plaintiffs allege that Defendants violated the dispute process provisions contained in the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq.* in connection with allegedly fraudulent withdrawals by unknown third parties from Plaintiffs' Cash App and Cash Card accounts.[1]

In signing up for their respective Cash App and Cash Card accounts, each of the four Plaintiffs entered into unambiguous agreements to arbitrate any disputes with Defendants. Accordingly, Plaintiffs should have brought their disputes in arbitration in the first instance. Under the Federal Arbitration Act ("FAA"), "in deciding whether claims are subject to arbitration, a court must consider (1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement"—but "[b]efore addressing the second inquiry," the court must identify whether it or the arbitrator should decide the issue. *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). On this point, parties may include in a contract an "agree[ment] to arbitrate 'gateway' questions of 'arbitrability' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). This agreement "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce." *Id.* at 69. Thus, "[t]he question of *who* is to decide whether a dispute is arbitrable is one that must necessarily precede the question of *whether* a

---

[1] Cash App is a mobile payment software application offered by Square Inc. that allows customers to store funds in a balance, transfer money to one another ("P2P"), buy, sell and store BitcoinCash, or make purchases using a VISA wherever VISA cards are accepted. Through the Cash App, customers may request a VISA branded "Cash Card," or reloadable prepaid card, that is issued by Sutton Bank. *See also* FAC ¶ 24-25 (ECF No. 26).

dispute is arbitrable." *VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P.*, 717 F.3d 322, 324 (2d Cir. 2013). Here, in opening and using Cash App and Cash Card accounts, Plaintiffs entered into contracts with Defendants and in doing so agreed to arbitration. Plaintiffs likewise agreed to delegate gateway questions of arbitrability to an arbitrator.

*First*, Plaintiffs agreed to Square's General Terms of Service and Additional Cash Terms of Service ("Square's TOS"), which at all relevant times included an agreement to arbitrate "any and all [d]isputes," including "any…dispute between [Plaintiffs] and Square, its processors, suppliers or licensors…including any claims relating in any way to [Square's TOS] or the Services, or any other aspect of [Plaintiffs'] relationship" with Square. Plaintiffs also agreed to Sutton Bank's Cash Card Terms of Service ("Sutton Bank's TOS"), which included a similar agreement to arbitrate "any and all controversies, disputes, demands, claims, or causes of action" against Sutton Bank and also against Square.[2] Courts routinely enforce agreements to arbitrate like the ones Plaintiffs agreed to here. *See, e.g., Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017); *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825 (S.D.N.Y. 2020); *Sultan v. Coinbase, Inc.*, 354 F. Supp. 3d 156, 161 (E.D.N.Y. 2019).

*Second*, the parties have clearly and unmistakably agreed to delegate any dispute over the arbitrability of Plaintiffs' claims to the arbitrator. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). At all relevant times, the parties' arbitration agreements incorporated by reference the rules of the American Arbitration Association ("AAA"), which delegate the issue of arbitrability to the arbitrator. By incorporating the AAA rules, which "empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Sol., Co. LTD.*, 398 F.3d 205, 208 (2d Cir. 2005). Moreover, all Plaintiffs agreed to at least one arbitration agreement with explicit delegation language, which expressly noted that the arbitrator shall be responsible for determining all threshold arbitrability issues. Courts, including this one, have consistently upheld similar delegation clauses. *Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 398 (2d Cir. 2018); *Arkin v. DoorDash, Inc.*, No. 19CV4357NGGRER, 2020 WL 4937825, at *4–5 (E.D.N.Y., Aug. 24, 2020) (finding parties delegated issues of enforceability of the arbitration agreement to the arbitrator).

Even if this Court were to reach the arbitrability question—which it should not, because that question has been reserved for the arbitrator—the claims at issue here are covered by the arbitration agreements. Plaintiffs' allegations relating to alleged fraudulent withdrawal of funds from Plaintiffs' accounts, and the dispute resolution process for the Cash App and Cash Card, fall squarely within the broad arbitration provisions at issue here. Such broad arbitration

---

[2] At all relevant times, Sutton Bank's TOS provided that, in agreeing to the Sutton Bank TOS, Plaintiffs were also agreeing to Square's TOS. Each Plaintiff therefore agreed to Square's TOS on at least two occasions: once upon registering to use the Cash App, and a second time when requesting the Cash Card linked to the Cash App.

The Honorable Nicholas G. Garaufis
March 3, 2021
Page 4

provisions justify a "presumption of arbitrability." *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 172 (2d Cir. 2004); *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998) (enforcing clause requiring arbitration of "[a]ny dispute, controversy or claim arising under or in connection with" agreement), *abrogated on other grounds by Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015). Indeed, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

In light of the above, Defendants respectfully renew their request for a pre-motion conference to address their anticipated motion to compel arbitration in response to the FAC.

We thank the Court for Your consideration.

Respectfully submitted,

/s/ *Erin J. Cox*

Erin J. Cox

cc: Jonathan H. Blavin (admitted *pro hac vice*) (via ECF)
Laura M. Lopez (admitted *pro hac vice*) (via ECF)
John P. Amato (via ECF)
Aliza Pescovitz Malouf (via ECF)
Abigail M. Lyle (via ECF)
Beth Terrell (via ECF)
Daniel A. Schlanger (via ECF)